**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x        Case No.
DESPINA KOSTA

                               Plaintiff,
        - against –                                                                **VERIFIED COMPLAINT**

ROBBINS RESEARCH INTERNATIONAL,
ANTHONY J. "TONY" ROBBINS, and                           **PLAINTIFF DEMANDS**
BONNIE P. "SAGE" ROBBINS,                                       **A TRIAL BY JURY**

                               Defendants.
------------------------------------------------------------------x

Plaintiff DESPINA KOSTA ("Plaintiff"), by and through her attorneys, White, Hilferty & Albanese, P.C., hereby complains of Defendants, upon information and belief as follows:

## NATURE OF THE CASE

1. Plaintiff brings this action against Defendants alleging violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, Human Rights Law § 296, *et seq.*, the New York City Human Rights Law, N.Y. Admin Code 8-101, *et seq.*, and for Intentional Infliction of Emotional Distress. Plaintiff seeks damages to redress her emotional and financial losses which were inflicted by Defendants' unlawful retaliatory practices in violation of state and federal statutes.

## JURISDICTION & VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. § 2000, *et seq.*, and 28 U.S.C. §§ 1331 and 1343.

3. The Court has supplemental jurisdiction over Plaintiff's claims brought under state and city law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## PROCEDURAL REQUIREMENTS

5. Plaintiff formally filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC").

6. Plaintiff's formal complaint filed with the EEOC asserted the same factual allegations that are asserted herein this Complaint.

7. Plaintiff received from the EEOC a notice of right to sue, dated December 8, 2020.

8. Plaintiff has timely filed this action within ninety (90) days of receipt of said notice of right to sue.

9. Plaintiff timely and properly filed this suit after exhausting all administrative remedies with the EEOC.

## THE PARTIES

10. Plaintiff was and is a resident of the State of New York, County of New York.

11. Defendant Robbins Research International ("RRI") is a corporation engaged in researching and marketing Defendant Tony Robbins' personal development businesses; conducting personal development, sales and corporate seminars that cover a wide range of topics, from mental conditioning and personal achievement systems to communication and business mastery, located in San Diego, California.

12. Defendant Tony Robbins ("Robbins") is the founder and owner of RRI.

13. Defendant Bonnie P. "Sage" Robbins is the spouse of Defendant Tony Robbins.

14. At all times relevant, Defendant RRI owns, operates, and/or maintains an office in New York, New York.

15. At all times relevant, Ms. Kosta worked for Defendant in New York.

## **MATERIAL FACTS**

16. RRI hired Ms. Kosta nine years ago and she most recently served in the position of Personal Results Specialist.

17. Ms. Kosta also worked for RRI's European Division prior to her transition to the United States, totaling 18 years working for Robbins.

18. Ms. Kosta's performance exceeded expectations and she quickly became one of the highest rated sales employees in the company.

19. In April 2020, Ms. Kosta became ill with Covid-19 and the virus' toll on her body required her to be hospitalized and placed on a ventilator.

20. Ms. Kosta was in a coma from April 12, 2020 through May 5, 2020.

21. While Ms. Kosta lay comatose ventilated in a hospital Robbins took advantage of Ms. Kosta's frightful situation for his own benefit and falsely claimed that he saved her life.

22. Robbins instructed Ms. Kosta's manager to gather information on her condition from her teenage daughter.

23. Additionally, Sage Robbins, on behalf of her husband, contacted Ms. Kosta's teenage daughter to intentionally pry information out of her regarding Ms. Kosta's condition for Robbins' own personal gain.

24. Sage Robbins also contacted Ms. Kosta's sister to intentionally pry information from her regarding Ms. Kosta's condition.

25. This caused Ms. Kosta's daughter and family an immense amount of distress with their mother in critical condition.

26. Robbins sought to use the Covid-19 Pandemic to bolster his business of being a lifestyle, health, and overall life guru.

27. By falsely claiming he saved an employee's life during an international pandemic from the very disease that was and is ravishing the world, Robbins attempted to convince his followers that he has otherworldly knowledge and powers – that HE knew better than the doctors treating Ms. Kosta.

28. The doctors treating Ms. Kosta were some of the best in the world from NY Presbyterian Weill Cornell.

29. During a call with Ms. Kosta's clients, Robbins alleged that he convinced the doctors to take Ms. Kosta off the ventilator.

30. One of Ms. Kosta's clients contacted her afterward and discussed the contents of this call.

31. Robbins also recorded a podcast where he spoke about Ms. Kosta's experience with Covid-19 and falsely claimed he was instrumental in her recovery.

32. Although Robbins did not identify Ms. Kosta by name, he provided enough specific information that people knew exactly who Robbins discussed. Many of Ms. Kosta's clients contacted her directly in response.

33. Knowing Robbins was publishing information – including false information – about her health and well – being caused Ms. Kosta extreme emotional distress.

34. Robbins knew or should have known his actions would cause Ms. Kosta distress.

35. Ms. Kosta also believes Mr. Robbins' actions damaged her reputation with her clients.

36. On May 26, 2020, Ms. Kosta reached out to Human Resources Generalist Parizad Atashfaraz to arrange a time to speak.

37. Atashfaraz confirmed that she had learned about Ms. Kosta contracting Covid-19.

38. On May 28, 2020, Atashfaraz missed their scheduled call and they finally connected on May 29, 2020.

39. Atashfaraz suggested that Ms. Kosta take New York State disability leave if she did not feel well enough to return to work and provided her with no other options or alternatives.

40. On June 2, 2020, Ms. Kosta inquired about how much vacation time she had remaining to utilize this time off to continue with her recovery from Covid-19.

41. On June 4, 2020, Ms. Kosta followed up with Atashfaraz about her vacation time.

42. On June 5, 2020, Atashfaraz informed Ms. Kosta that she needed to obtain approval from Manager Shari Wilson to utilize her unpaid vacation time while she continued to recover; however, failed to provide her with the amount of vacation time she had left and urged Ms. Kosta to take disability leave.

43. Ms. Kosta shortly thereafter learned that she had a mass on her chest and would need extended time off work.

44. RRI again refused her requested time off in the form of FMLA or accrued vacation/PTO.

45. On June 11, 2020, Ms. Kosta informed Atashfaraz that her chest x-rays revealed an enlarged lymph node/tumor on her chest and that she required more time to recover from Covid-19 and to undergo additional testing with respect to the enlarged lymph node.

46. Ms. Kosta requested an amount certain regarding her vacation time that RRI repeatedly failed to provide her an account of.

47. On June 15, 2020, Atashfaraz responded that Ms. Kosta's emergency FMLA expired on June 30, 2020, and that if she could not return to work in July 2020 that her health insurance would be terminated and that she could elect into COBRA.

48. Fearing the security of her employment and insurance benefits based upon Atashfaraz's statement, on June 18, 2020, Ms. Kosta informed Atashfaraz that she would return to work on July 1, 2020.

49. On June 23, 2020, Ms. Kosta reached out to Atashfaraz expressing her concerns with returning to work. Ms. Kosta mentioned that her doctors advised she would need at least six months to fully recover and it had only been six weeks.

50. Ms. Kosta inquired into what her options are and specifically asked about FMLA leave. Atashfaraz responded that Ms. Kosta's only option would be to take disability leave.

51. On June 26, 2020, Ms. Kosta spoke with Sales Director Shari Wilson ("Wilson") and requested a reasonable accommodation that permitted her to work within her health parameters while still doing her job.

52. With Ms. Kosta's continued health struggles in connection with her recovery from Covid-19 and recent cancer diagnosis, Ms. Kosta requested to reduce her workday hours.

53. Ms. Kosta's reasonable accommodation request constituted engagement in protected activity.

54. As a commission-based sales employee, Ms. Kosta's request did not pose an undue burden upon RRI and Ms. Kosta had all resources and tools at her disposal to work as she had already been working remotely.

55. Wilson denied this request and stated that RRI did not have any part-time work for her.

56. This statement is patently false because as delineated above, Ms. Kosta is a commission-based sales employee, and the nature of her work did not prohibit her from working fewer hours per day or from home.

57. On June 28, 2020, Ms. Kosta emailed Wilson requesting permission to utilize her unpaid vacation time to continue with her Covid-19 recovery.

58. Wilson failed to reply Ms. Kosta's plea for assistance from RRI with her medical leave/condition, who she dedicated eighteen (18) years of service to and generated millions of dollars in revenue.

59. On June 29, 2020, Ms. Kosta texted Wilson notifying her about the email; however, Wilson failed to respond.

60. On July 1, 2020, Ms. Kosta attempted to log into her email and software but learned that RRI prohibited her access.

61. Ms. Kosta informed RRI; however, RRI failed to provide access to her email and necessary software in order for her to work.

62. Ms. Kosta resorted to working from her cell phone to service her clients.

63. On July 15, 2020, Ms. Kosta reached out to Heather Diem ("Diem") as a result of Wilson's failure to reply.

64. Ms. Kosta notified Diem about the tumor and upcoming surgery to have it removed.

65. Diem stated that Ms. Kosta could only take disability leave and that her leave ended on June 30, 2020.

66. Diem also conveniently suggested that RRI could sever Ms. Kosta from the company.

67. On July 29, 2020, Ms. Kosta followed up with Diem and again requested that Diem approve the utilization of her vacation time for her upcoming surgery and her continued recovery from Covid-19.

68. Ms. Kosta mentioned that Wilson failed to respond to her previous requests for same.

69. Diem tried to manipulate the facts by stating that Wilson/RRI essentially approved Ms. Kosta to take off the month of July 2020 and that RRI could not approve any time off past July 2020.

70. Ms. Kosta had no knowledge that RRI approved her vacation time nor that she had been utilizing her vacation time for the month of July 2020.

71. Diem specifically stated, "It is recommended that you either go on state disability or we offer you a severance."

72. Ms. Kosta corrected Diem and stated that Wilson never responded to her multiple pleas to utilize her unpaid vacation time while she recovered from Covid-19 and now for her upcoming tumor removal procedure.

73. Ms. Kosta also reminded Diem that she returned to work as of July 1, 2020; however, RRI failed to reinstate her email and software access.

74. Diem then admitted that RRI directed Wilson to deliberately ignore Ms. Kosta's multiple requests to utilize her unpaid vacation time.

75. Diem went on to state that Ms. Kosta's leave ended in June 2020 and that by August 2020 she needed to make a decision regarding disability leave or accepting the severance offer. Diem presented Ms. Kosta with an ultimatum.

76. During the entire month of July 2020, RRI either ignored Ms. Kosta or delayed responding to her leave related inquiries causing Ms. Kosta an immense amount of stress.

77. RRI only stopped threatening to terminate Ms. Kosta when her lawyers submitted its letter of representation on July 31, 2020.

78. Based on the foregoing, Defendant RRI subjected Ms. Kosta to discrimination on the basis of her disability and Defendants RRI, Robbins and Sage Robbins subjected Ms. Kosta to intentional infliction of emotional distress.

## AS A FIRST CAUSE OF ACTION OF DISCRIMINATION AGAINST DEFENDANT RRI
## UNDER THE AMERICANS WITH DISABILITIES ACT OF 1990

79. Plaintiff repeats, re-alleges and reaffirms each and every allegation in paragraphs above as if said paragraphs were more full set forth herein at length.

80. Plaintiff claims Defendant RRI violated the Americans with Disabilities Act of 1990.

81. The Americans with Disabilities Act of 1990, Section 12112(a) states, "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

82. Defendant is engaged in an industry affecting commerce, and employees more than 15 employees in each of 20 or more calendar weeks in the current or preceding calendar year; Defendant is therefore subject to the ADA.

83. RRI engaged in an unlawful discriminatory practice by taking adverse action against Ms. Kosta on the basis of her disabilities.

84. RRI had notice of Ms. Kosta's disabilities as evinced by Robbins' publicity of her illness and her emails to Defendant in connection with her Covid-19 recovery and lung mass complications that followed.

85. Ms. Kosta became ill with Covid-19 and thereafter learned that she had a malignant mass on her chest. Both qualify as disabilities within the meaning of the ADA, as both caused impairments that substantially limited one or more major life activities for Ms. Kosta, including but not limited to, working. Because of Covid-19, Ms. Kosta was hospitalized for weeks while in a coma and placed on a ventilator. Her recovery also substantially

limited her functionality as did her lung mass requiring that she undergo surgery to remove it.

86. Ms. Kosta was qualified for her position because her performance exceeded expectations and she quickly became one of the highest rated sales employees in the company.

87. Ms. Kosta was able to perform the essential functions of her job without a reasonable accommodation until July 2020, wherein she requested to work remotely and reduce her hours, that RRI denied.

88. Ms. Kosta requested a reduced hours remote work arrangement as a reasonable accommodation to allow herself time to recover from Covid-19 and to undergo surgery to remove the lung mass. RRI denied this request despite that Ms. Kosta was a commission-based employee and the nature of her work did not prohibit her from working from home.

89. When Ms. Kosta communicated the need to heal herself and undergo further medical treatment, RRI refused Ms. Kosta's requested time off in the form of FMLA or accrued vacation/PTO and intentionally either ignored or delayed responding to her leave related inquiries.

90. On, July 30, 2020, RRI presented Ms. Kosta with an ultimatum by requiring her to either return to work full time or face termination.

## SECOND CAUSE OF ACTION - DISCRIMINATION AGAINST DEFENDANT RRI UNDER THE HUMAN RIGHTS LAW § 296

91. Plaintiff repeats, re-alleges and reaffirms each and every allegation in paragraphs above as if said paragraphs were more full set forth herein at length.

92. The New York State Human Rights Law, N.Y. Exec. Law 296 provides, in pertinent part: "It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation,

military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

93. RRI engaged in an unlawful discriminatory practice by taking adverse action against Ms. Kosta on the basis of her disabilities.

94. Under the New York State Human Rights Law ("NYSHRL"), the term 'disability' is broadly defined. Disability "means a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques." Executive Law § 292 [21].

95. Ms. Kosta became ill with Covid-19 and thereafter learned that she had a malignant mass on her chest. Both qualify as disabilities within the meaning of the NYSHRL, as both caused physical and mental impairments. Ms. Kosta's medical conditions are demonstrable by medically accepted clinical or laboratory diagnostic techniques and certainly cause impairment. Because of Covid-19, Ms. Kosta was hospitalized for weeks while in a coma and placed on a ventilator. Her recovery also substantially limited her functionality as did her lung mass requiring that she undergo surgery to remove it.

96. RRI had notice of Ms. Kosta's disabilities as evinced by Robbins' publicity of her illness and her emails to RRI in connection with her Covid-19 recovery and lung mass complications that followed.

97. Ms. Kosta became ill with Covid-19 and thereafter learned that she had a malignant mass on her chest. Both qualify as disabilities within the meaning of the ADA, as both caused

impairments that substantially limited one or more major life activities for Ms. Kosta, including but not limited to, working. Because of Covid-19, Ms. Kosta was hospitalized for weeks while in a coma and placed on a ventilator. Her recovery also substantially limited her functionality as did her lung mass requiring that she undergo surgery to remove it.

98. Ms. Kosta was qualified for her position because her performance exceeded expectations and she quickly became one of the highest rated sales employees in the company.

99. Ms. Kosta was able to perform the essential functions of her job without a reasonable accommodation until July 2020, wherein she requested to work remotely and reduce her hours, that RRI denied.

100. Ms. Kosta requested a reduced hours remote work arrangement as a reasonable accommodation to allow herself time to recover from Covid-19 and to undergo surgery to remove the lung mass. RRI denied this request despite that Ms. Kosta was a commission-based employee and the nature of her work did not prohibit her from working from home.

101. When Ms. Kosta communicated the need to heal herself and undergo further medical treatment, RRI refused Ms. Kosta's requested time off in the form of FMLA or accrued vacation/PTO and intentionally either ignored or delayed responding to her leave related inquiries.

102. On, July 30, 2020, RRI presented Ms. Kosta with an ultimatum by requiring her to either return to work full time or face termination.

### AS A THIRD CAUSE OF ACTION OF DISCRIMINATION AGAINST DEFENDANT RRI
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

103. Plaintiff repeats, re-alleges and reaffirms each and every allegation in paragraphs above as if said paragraphs were more full set forth herein at length.

104. The New York City Human Rights Law, N.Y. Admin Code 8-101 provides, in pertinent part: "It shall be an unlawful discriminatory practice: (a) For an employer or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual orientation, uniformed service or alienage or citizenship status of any person: (i) To represent that any employment or position is not available when in fact it is available; (ii) To refuse to hire or employ or to bar or to discharge from employment such person; or (iii) To discriminate against such person in compensation or in terms, conditions, or privileges of employment."

105. RRI engaged in an unlawful discriminatory practice by taking adverse action against Ms. Kosta on the basis of her disabilities.

106. Under NYCHRL, a disability is defined as "any physical, medical, mental or physiological impairment." *Watson v. Emblem Health Serv.,* 158 A.D.3d 179 (1st Dept. 2018)(quoting N.Y.C. Admin. Code § 8-107(15)(a)).

107. Ms. Kosta became ill with Covid-19 and thereafter learned that she had a malignant mass on her chest. Both qualify as disabilities within the meaning of the NYSHRL, as both caused physical and mental impairments. Ms. Kosta's medical conditions are demonstrable by medically accepted clinical or laboratory diagnostic techniques and certainly cause impairment. Because of Covid-19, Ms. Kosta was hospitalized for weeks while in a coma

and placed on a ventilator. Her recovery also substantially limited her functionality as did her lung mass requiring that she undergo surgery to remove it.

108. RRI had notice of Ms. Kosta's disabilities as evinced by Robbins' publicity of her illness and her emails to RRI in connection with her Covid-19 recovery and lung mass complications that followed.

109. Ms. Kosta became ill with Covid-19 and thereafter learned that she had a malignant mass on her chest. Both qualify as disabilities within the meaning of the ADA, as both caused impairments that substantially limited one or more major life activities for Ms. Kosta, including but not limited to, working. Because of Covid-19, Ms. Kosta was hospitalized for weeks while in a coma and placed on a ventilator. Her recovery also substantially limited her functionality as did her lung mass requiring that she undergo surgery to remove it.

110. Ms. Kosta was qualified for her position because her performance exceeded expectations and she quickly became one of the highest rated sales employees in the company.

111. Ms. Kosta was able to perform the essential functions of her job without a reasonable accommodation until July 2020, wherein she requested to work remotely and reduce her hours, that RRI denied.

112. Ms. Kosta requested a reduced hours remote work arrangement as a reasonable accommodation to allow herself time to recover from Covid-19 and to undergo surgery to remove the lung mass. RRI denied this request despite that Ms. Kosta was a commission-based employee and the nature of her work did not prohibit her from working from home.

113. When Ms. Kosta communicated the need to heal herself and undergo further medical treatment, RRI refused Ms. Kosta's requested time off in the form of FMLA or accrued

vacation/PTO and intentionally either ignored or delayed responding to her leave related inquiries.

114. On, July 30, 2020, RRI presented Ms. Kosta with an ultimatum by requiring her to either return to work full time or face termination.

**FOURTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST TONY AND SAGE ROBBINS**

115. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

116. In April 2020, Ms. Kosta became ill with Covid-19 and the virus' toll on her body required her to be hospitalized and placed on a ventilator.

117. Ms. Kosta was in a coma from April 12, 2020 through May 5, 2020.

118. While Ms. Kosta lay comatose ventilated in a hospital Robbins took advantage of Ms. Kosta's frightful situation for his own benefit and falsely claimed that he saved her life.

119. Robbins instructed Ms. Kosta's manager to pry Ms. Kosta's health information from her teenage daughter and sister, to utilize for his own selfish gains.

120. Sage Robbins, on behalf of her husband, contacted Ms. Kosta's teenage daughter and sister to intentionally pry information out of her regarding Ms. Kosta's condition for Robbins' own personal gain.

121. This caused Ms. Kosta's daughter and family an immense amount of distress with their mother in critical condition.

122. Robbins sought to bolster his business of being a lifestyle, health, and overall life guru.

123. By falsely claiming he saved an employee's life during an international pandemic from the very disease that was and is ravishing the world, Robbins attempted to convince his

followers that he has otherworldly knowledge and powers – that HE knew better than the doctors treating Ms. Kosta.

124. The doctors treating Ms. Kosta were some of the best in the world from NY Presbyterian Weill Cornell.

125. During a call with Ms. Kosta's clients, Robbins alleged that he convinced the doctors to take Ms. Kosta off the ventilator.

126. One of Ms. Kosta's clients contacted her afterward and discussed the contents of this call.

127. Robbins also recorded a podcast where he spoke about Ms. Kosta's experience with Covid-19 and falsely claimed he was instrumental in her recovery.

128. Although Robbins did not identify Ms. Kosta by name, he provided enough specific information that people knew exactly who Robbins discussed. Many of Ms. Kosta's clients contacted her directly in response.

129. Defendants individual and collective actions of contacting Ms. Kosta's teenage daughter as well as exploiting Ms. Kosta's confidential medical condition to the public is extreme and outrageous with intent to cause emotional distress and mental harm to Ms. Kosta and her family.

130. As a direct result of Defendants' conduct, Ms. Kosta suffered actual damages in an amount to be determined at trial but exceeding the jurisdictional limits of all lower courts.

### AS A FIFTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANT RRI

131. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

132. After her near death experience with Covid-19, Ms. Kosta reached out to RRI on multiple occasions regarding her medical condition and recovery.

133. Shortly after, Ms. Kosta was diagnosed with cancer.

134. Ms. Kosta specifically requested her accrued unpaid vacation balance and whether she could utilize that time to allow herself to recover after being hospitalized in a coma on a ventilator because of Covid-19.

135. Atashfaraz would respond to Ms. Kosta's emails; however, ignored her specific inquiries related to her accrued vacation time. Eventually, Atashfaraz told her that she needed to seek authorization from her Manager Wilson but that RRI prohibited her from that option and she could only take state disability leave.

136. Wilson denied Ms. Kosta's request to work reduced hours and ignored Ms. Kosta's request to utilize her accrued vacation time both via email and text.

137. Left with no choice, Ms. Kosta returned to work on July 1, 2020.

138. Ms. Kosta thereafter contacted Diem pleading to use her vacation time to take care of her serious medical diagnosis and continue recovering from her near-death experience with Covid-19.

139. Diem admitted that RRI directed Wilson to deliberately ignore Ms. Kosta's multiple requests to utilize her unpaid vacation time.

140. Diem told Ms. Kosta that she could either take state disability leave or sever from Defendant.

141. RRI's actions of ignoring Ms. Kosta's and directing her to various different employees to discuss her options regarding leave after she almost died battling Covid-19 and was diagnosed with cancer is extreme and outrageous with intent to cause emotional distress and mental harm to Ms. Kosta and get her to quit her employment.

142. As a direct result of Defendants' conduct, Ms. Kosta suffered actual damages in an amount to be determined at trial but exceeding the jurisdictional limits of all lower courts.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, Human Rights Law § 296, *et seq.*, the New York City Human Rights Law, N.Y. Admin Code 8-101, *et seq.*, and for Intentional Infliction of Emotional Distress.

B. Awarding damages to the Plaintiff, resulting from Defendants' unlawful conduct otherwise make her whole for any losses suffered as a result;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York
December 23, 2020

    Respectfully submitted,

    /s/*J. Christopher Albanese*
    J. Christopher Albanese
    Nina A. Ovrutsky
    White, Hilferty & Albanese
    *Attorneys for Plaintiff*
    800 Third Avenue, Suite 2800
    New York, New York 10022
    (917) 932-2694
    (917) 810 9946

## VERIFICATION

State of New York
                         ss.:
County of

    Despina Kosta, being duly sworn, deposes and says: that they are the complainant herein; that they have read the foregoing complaint and knows the content thereof; that the same is true of his own knowledge except as to the matters therein stated on information and belief; and that as to those matters, they believe the same to be true.

                                                                                 Despina Kosta

Sworn to before me this 23
Day of November, 2020

Notary Public

**Nathalie Levy**
Commissioner of Deeds, State of New York
No. 2-14276
Qualified in New York County
Certified in Kings County
Commission Expires February 1, 2021
The UPS Store 82 Nassau St 212.406.9010